UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK #606507,                       Case No.  2:21-cv-00229

               Plaintiff,                       Hon.  Paul L. Maloney
                                                  U.S. District Judge

   v.

ERICA HUSS, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF Nos. 23 and 29.)

State Prisoner Bernard Hardrick filed a verified complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 1, PageID.16.)  Hardrick filed this lawsuit for events that allegedly occurred at the Marquette Branch Prison (MBP) during September and October of 2020. Hardrick's complaint names four Defendants:  Warden Huss, Registered Nurse (RN) Kubont (now named Masker), RN Christi, and Health Unit Manager (HUM) School.[1]  Hardrick says that Defendants violated his First and Eighth Amendment rights by refusing to separate him from Covid-19 positive

---

[1]    Plaintiff misidentified Defendant HUM Scott as Defendant HUM School in his complaint.

prisoners after he tested negative for the virus on multiple occasions. (ECF No. 1, PageID.1.) Hardrick says that when he filed grievances, Warden Huss retaliated against him by leaving an industrial-sized fan in front of his cell, which blew "dust, spittle, and extremely cold air on Plaintiff for a month." (*Id.*)

Hardrick says that after Defendants deliberately refused to follow MDOC Covid-19 protocols, he was labeled a P.U.I. (Person Under Investigation). (*Id.*, PageID.2.) Hardrick says that his P.U.I designation caused him to be treated as a Covid-19 positive prisoner. (*Id.*)

Hardrick also explains that after he refused to take a third Covid-19 test on October 2, 2020, staff labeled him as a P.U.I. (*Id.*, PageID.5.) Hardrick says that he was told that P.U.I. did not mean he was positive for Covid-19, but rather he was assumed positive for Covid-19 and would have to quarantine before he was allowed to house "in a negative area." (*Id.*, PageID.7.) As a result, Defendants housed Hardrick "in the covid infested unit." (*Id.*, PageID.2.) Hardrick says that unnamed nurses tried to intimidate him to take a Covid-19 test. (*Id.*, PageID.8.)

Defendants have filed motions for summary judgment and Hardrick has responded. (ECF Nos. 23, 25, 29, and 31.) The record indicates that Hardrick filed four relevant grievances that were each rejected as non-grievable. Hardrick was told to present the issue to the Warden's Forum or through his housing unit. Hardrick asserts that he was in administrative segregation so he could not present these issues to the Warden's Forum because the policy does not apply to prisoners in administrative segregation. In the opinion of the undersigned, Defendants have not

met their burden of establishing that they are entitled to summary judgment or that Hardrick failed to exhaust his available administrative remedies.  It is respectfully recommended that the Court deny Defendants' motions for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[2]     If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).   "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.   In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id*. at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id*. (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally

furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019).  According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

7

rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id.* at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV.  Grievances Identified by Defendants

In their motion for summary judgment, Defendants identified five grievances that Hardrick filed with MDOC.  They claim that a review of these grievances will demonstrate that Hardrick has failed to exhaust his administrative remedies.  These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-20-10-1530-27b (ECF No. 24-3, | Kubant, Lakenine, and two unknown nurses | Labeled as a P.U.I. for Covid-19 despite never testing positive for the virus. | 10-22-20 | Rejected as non-grievable due to content of policy or procedure. | Rejected because issue should be raised in Prisoner Housing Unit Representatives/ Warden's Forum. | Named for the first time Negrinelli and |

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596.  For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

| Grievance No. | Person Named | Allegation | Date | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| PageID.14 4-147.) | | | | | | School. Rejection upheld |
| MBP-20-10-1582-22b (*Id.*, PageID.14 8-150.) | Warden Huss, Deputy Warden Tasson | Failure to remove from administrative segregation/quara-ntine status due to his refusal to take Covid-19 test, in violation of MDOC Policy Directive 04.05.120(HHH), which requires Warden approval to classify an inmate in segregation for over 30 days. Warden Huss took adverse action due to Hardrick's exercise of his Constitutional rights. | 10-27-20 | Rejected as non-grievable for grieving content of administrative rules. | Rejected because issue should be raised in Prisoner Housing Unit Representatives/ Warden's Forum. | Denied |
| MBP-20-10-1267-15z (*Id.*, PageID.15 1-153.) | Librarian Bomer | Asserting First Amendment denial of access to law library for failing to provide case law on four occasions. | 9-14 to 10-4-20 | Denied | Denied | Denied |
| MBP-20-10-1210-27b (*Id.*, PageID.15 4-156.) | Warden Huss and Sgt. Watson | Industrial fan blowing air/dust into cell | 9-30-20 | Rejected as non-grievable because issue should be raised in Prisoner Housing Unit Representatives/ Warden's Forum. | Denied/Rejected for grieving content of PD 03.02.130 | Rejected |
| MBP-20-10-1277-27b (*Id.*, PageID.15 7-159.) | Warden, ADW, and Staff | Warden "planted" a Covid-19 positive prisoner in segregation and placed lives in danger. Housed around Covid-19 prisoners although Hardrick never tested positive. Industrial size fan is blowing virus into Hardrick's cell. | 10-1-20 | Rejected as non-grievable because issue should be raised in Prisoner Housing Unit Representatives/ Warden's Forum. | Rejected | Rejected |

## V. Analysis

Four of the grievances set forth in the table above are relevant to Hardrick's

claims: <u>MBP-20-10-1530-27b</u>, <u>MBP-20-10-1582-22b</u>, <u>MBP-20-10-1210-27b</u>, and <u>MBP-20-10-1277-27b</u>. Those grievances involve Hardrick's claims that after he was labeled

a P.U.I., he was placed in segregation with Covid-19 positive prisoners, and/or that an industrial fan was placed outside his cell blowing dust and cold air into his cell. Each of these grievances was rejected as non-grievable because they were either determined to challenge the content of policy or procedure or applied to the prison population as a whole.  Further, the grievance responses indicated that Hardrick should raise these issues in the Prisoner Housing Unit Representatives/Warden's Forum.

First, Defendants argue that Hardrick's grievances were properly rejected as non-grievable because he was challenging a prison policy or procedure.  (ECF No. 24, PageID.116.)  Defendants argue that Hardrick needed to present the issues that he raised in his grievances to the Warden's Forum to administratively exhaust his claims under MDOC Policy Directive 04.01.150(A).  (*Id.*)  Hardrick responded by stating that he was not required to present the issues to the Warden's Forum because he was housed in administrative segregation and the policy requiring prisoners to submit issues to Warden's Forum was not applicable to him.

Paragraph F of MDOC Policy Directive 03.02.130 (effective date 3/18/2019) provides that:

> F.    Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of this policy and related procedures.

In addition, Paragraph (J)(8) of MDOC Policy Directive 03.02.130 (J)(8) provides:

> J.    Prisoners and parolees are required to file grievances in a responsible manner.  A grievance shall be rejected by the Grievance Coordinator if:

. . . .

8.    The prisoner is grieving <u>content</u> of the policy or procedure except as it was specifically applied
to the grievant.   If a prisoner has a concern with the content of a policy or procedure, s/he may
direct comments to the Warden's Forum as provided in PD 04.01.105 "Prisoner Housing Unit
Representatives/Warden's Forum."

(ECF No. 24-2, PageID.123-124.)

This Court addressed a similar situation in *Lopp v. Washington*, No. 1:19-CV-

540, 2021 WL 3033266 (W.D. Mich. July 19, 2021).   There, as here, the plaintiff's

grievance had been rejected as non-grievable, and the respondent encouraged the

plaintiff to raise his issues at the Warden's Forum.   *Id.* at *1.   The Court opined that

the Warden's Forum may be the proper venue to exhaust claims challenging a prison

policy or procedure.   But the Court found that the plaintiff's claims did not in fact

concern the contents of a policy or procedure.   *Id.* at *1-2.   Instead, the prisoner

claimed that his specific constitutional rights had been violated, and the proper

avenue for exhaustion was the grievance process.   *Id.* at *2.   However, because the

respondent rejected the plaintiff's grievance as non-grievable, the plaintiff was not

required to proceed through all steps of the grievance process to exhaust his claims.

*Id.*

Unlike the plaintiff's grievance's in *Lopp*, Hardrick's grievances concerning

being labeled a "P.U.I." for refusing his Covid-19 test appear to challenge the contents

of a prison policy – namely, the MDOC's policy of designating prisoners who refuse to

take a Covid-19 test as "P.U.I.", and requiring them to house with inmates who have

tested positive for Covid-19.   Hardrick did not assert that Defendants violated that policy, nor did he challenge the policy's specific application to him.[4]

Accordingly, it appears that Hardrick's grievances were properly rejected as non-grievable under MDOC Policy Directive 03.02.130, ¶ (J)(8).  Less clear, however, is whether the grievances regarding the industrial fan pointing into Hardrick's cell were properly rejected as non-grievable.[5]  Nevertheless, each of Hardrick's grievances was rejected as presenting "non-grievable" issues.

The question that remains is whether Hardwick had an alternative administrative remedy available to him.  Defendants argue that he did have a remedy that he failed to pursue.

Defendants argue that Hardrick should have raised the issues presented in his grievances to the Warden's Forum under MDOC Policy Directive 04.01.150 (effective date 10/1/2019).  But even if MDOC Policy Directive 04.01.150 clearly applied,

---

[4]    In other words, Hardrick's complaint was not that the policy was improperly applied to him, it was that the policy itself was improper. (*See, e.g.*,  ECF No. 24-3, PageID.147 ("Around 4:50pm, Ms. Kubont, a Registered Nurse, walked [past my] cell when I stopped her to ask why would Medical Staff [label] me a 'P.U.I.' when I never tested positive for Covid-19.  Ms. Kubont stated that a 'P.U.I' means one of two things: that I have a Covid test pending or; I refused to take the test.  I informed her that the last time I took the Covid test it came back negative, and I refused to take any further tests afterwards as of right. Ms. Kubont stated that due to me denying any further test is the reason I am labeled a 'P.U.I.' and that I won't get off PUI status unless I submit to another test.")

[5]    Notably, MBP-20-10-1210-27B was not rejected as grieving the contents of a policy or procedure; instead, it was rejected as "pertaining to the prison population as a whole." (ECF No. 24-3, PageID.156.)  But Policy Directive 03.02.130 does not indicate that such issues are non-grievable.

Defendants have not met their burden of establishing that Plaintiffs failed to exhaust this remedy.  Paragraph A of MDOC Policy Directive 04.01.150(A) is shown below.

> A.    This policy applies only to general population housing units for security Level I through V prisoners.   In other units, prisoners should contact their Resident Unit Manager (RUM) with concerns regarding conditions of confinement that affect groups of prisoners or the entire unit.   If the RUM cannot resolve the concerns, they shall submit them to the appropriate Assistant Deputy Warden (ADW).   If the concern cannot be resolved by the ADW, they shall submit the concerns to the Deputy Warden.   If the concern cannot be resolved by the Deputy Warden, they shall refer the matter to the Warden for resolution.

MDOC Policy Directive 04.01.150, *Prisoner Housing Unit Representatives / Warden's Forum*, https://www.michigan.gov/corrections/public-information/ statistics-and- reports/policy-directives (last visited 6/2/2023).[6]

Defendants assert that Hardrick did not raise his issues at the Warden's Forum.   But, as shown above, MDOC Policy Directive 04.01.150(A) specifically excludes prisoners in administrative segregation from participation in the Warden's Forum.  Instead of raising concerns at the Warden's Forum, it instructs prisoners outside of the general population housing units to submit "concerns regarding conditions of confinement that affect groups of prisoners or the entire unit" to their Resident Unit Manager (RUM), then their Assistant Deputy Warden, and finally their Warden.  *Id.*  Nowhere in Defendants' briefs or accompanying documents does it state that Hardrick failed to raise his concerns to his RUM, the ADW, or to the Warden, as set forth in MDOC Policy Directive 04.01.150(A).   Hardrick's verified complaint says that he addressed his concerns to Warden Huss and to Deputy Warden Tasson. (ECF No. 1, PageID.4, 9-11.)  Hardrick stated in his grievances that

---

[6]    Defendants did not include a copy of this Policy Directive in the exhibits attached to their brief in support of their summary judgment motions.

he raised his issues with Warden Huss and Deputy Warden Tasson.  (ECF No. 24-3, PageID.150, 156, 159.)  Ultimately, it is Defendants' burden to establish that there are no genuine issues of material fact on this point.

In the opinion of the undersigned, there exists a genuine issue of material fact regarding whether Hardrick had an available administrative that he failed to exhaust, and Defendants have failed in their burden to show that they are entitled to summary judgment.

Second, despite the fact that the relevant grievances were rejected as non-grievable, Defendants Warden Huss and HUM Scott argue that Hardrick failed to exhaust his retaliation claims through the grievance process.  (ECF No. 25, PageID.117.)[7]  This Court has repeatedly rejected the argument that a prisoner whose grievances are rejected as non-grievable must nonetheless appeal those rejections through all three steps of the grievance process.  *Valdez v. Bray*, No. 2:21-CV-58, 2022 WL 3587883, at *4 (W.D. Mich. July 22, 2022), *report and recommendation adopted*, No. 2:21-CV-58, 2022 WL 3586244 (W.D. Mich. Aug. 22, 2022) ("[F]or the MDOC to instruct a prisoner that his claims fall outside of its grievance procedure and then assert that the claims are barred from litigation because the prisoner did not exhaust the same procedure belies logic."); *Kelly v. Labelle*, No. 2:20-CV-00049, 2021 WL 2419569, at *5 (W.D. Mich. May 12, 2021), *report and recommendation adopted*, No. 2:20-CV-49, 2021 WL 2417104 (W.D. Mich.

---

[7]    Defendant Scott makes a similar argument by asserting that he was not named in Hardwick's grievances.  (ECF No. 30, PageID.180-181.)

June 14, 2021) (opining that by rejecting the plaintiff's grievance as non-grievable and then asserting that the plaintiff failed to appeal his grievance, the MDOC placed the plaintiff in a "proverbial 'Catch-22' situation").  It is disingenuous to argue that Hardrick failed to exhaust his retaliation claim against Warden Huss or HUM Scott via the grievance process when MDOC staff told Hardrick that his claims were non-grievable.

Moreover, Hardrick did in fact raise retaliation claims in his grievances against Warden Huss, and he appealed those grievances through all three steps of the grievance process.  In his Step I MBP-20-10-1582-22b grievance, Hardrick wrote:

> The adverse actions of the warden contributing to my extended stay in segregation, without her written approval per policy, because I chose to exercise my Eighth and Fourteenth Amended right to deny medical treatment, constitutes a violation of my First, Eighth, and 14th Amendment rights to be free from retaliation and cruel and unusual punishment.

(ECF No. 24-3, PageID.150.)  In his Step II MBP-20-10-1210-27b grievance, Hardwick asserted that Warden Huss retaliated against him by refusing to remove the industrial fan directed into his cell.  Hardwick wrote:

> When Grievant questioned Warden Huss as to why she has not ordered staff to turn the fan off, she responded: "why would I help a guy that files grievances against me, besides that, you're the same guy who gives my staff a hard time whenever they come around with Covid tests and you refuse it.  I tell you what, I'll cut the fan off when you take the test, other than that make the best of your refrigerated cell." Grievant contends that Erica Huss is now intentionally exercising [torture] tactics against him as a form of retaliation for writing complaints against her and for exercising his right to refuse medical treatment (the Covid-19 test) in violation of his First and Eighth Amendment right.

(ECF No. 24-3, PageID.155.)

In sum, it is the opinion of the undersigned that there are genuine issues of material fact bearing on whether there were administrative remedies available to Hardrick to exhaust.

## VI.  Recommendation

The undersigned respectfully recommends that this Court deny Defendants' motions for summary judgment (ECF Nos. 23 and 29) because Defendants failed to establish the lack of any genuine issues of material fact regarding whether Hardrick exhausted his administrative remedies. [8]

Dated:   June 20, 2023                                    /s/ *Maarten Vermaat*
                                                                            MAARTEN VERMAAT
                                                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[8]    Hardrick argues that he should be compensated for his time spent to respond to Defendants' motions because the arguments asserted are frivolous.  (ECF No. 25, PageID.162-163.)   It is recommended that the Court deny this request, because the arguments made by defense counsel are not entirely baseless nor made in bad faith. Further, Plaintiff's request is not procedurally proper under Fed. R. Civ. P. 11.