UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK #606507,

          Plaintiff,

  v.

ERICA HUSS, et al.,

          Defendants.

_____/

Case No.   2:21-cv-00229

Hon.   Paul L. Maloney
U.S. District Judge

## **REPORT AND RECOMMENDATION**

### I.  Introduction

This Report and Recommendation (R&R) addresses the motion to dismiss filed by Defendants (ECF No. 38), the motion to show cause filed by Plaintiff (ECF No. 47), and the motion to strike Plaintiff's reply brief to the response to the motion to show cause filed by Defendants (ECF No. 52).

On November 8, 2021, State Prisoner Bernard Hardrick filed a verified complaint pursuant to 42 U.S.C. § 1983.   (ECF No. 1, PageID.16.)   Hardrick is now housed at the Baraga Maximum Correctional Facility (AMF).   (ECF No. 10.)   The events at issue in this case took place at the Marquette Branch Prison (MBP) during September, October, and November of 2020.

Hardrick's complaint names four Defendants: Warden Huss, Registered Nurse (RN) Kubont (now named Masker), RN Negrinelli, and Health Unit Manager (HUM) School.[1]

Hardrick alleges violations of his rights under the First and Eighth Amendments.   (ECF No. 1, PageID.1.)   Hardrick's first set of claims relate to his placement in cell C-21 on or about September 24, 2020.   He alleges that a large wall-mounted fan was pointed directly into this cell.   Hardrick says that this placement violated his right to be free from cruel and unusual punishment.   He also says that this placement and the directional alignment of the fan was done to retaliate against him for exercising his rights.   Hardrick also says that Kubont, Negrinelli and School unlawfully designated him as a Person Under Investigation (P.U.I.), which Hardrick explains is a designation for prisoners who refused to take COVID-19 tests.   He says this designation resulted in his continued placement near other prisoners who were actually COVID-19-positive.   He says these decisions also violated his rights under the Eighth Amendment.   Hardrick also accuses Warden Huss of violating his rights under the Eighth Amendment by requiring him to be housed near COVID-positive prisoners.

Hardrick's complaint does not include a listing of specific claims.   The undersigned interprets Hardrick's claims as follows:

| Claim Number | Defendant(s) | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Warden Huss | 8th Amendment: Cruel and unusual | Beginning on Sept. 24, 2020 and continuing for about 35 days, or | Plaintiff placed in cell C-21. Large wall- |

---

[1]    Plaintiff misidentified Defendant HUM School in his complaint.

| Claim Number | Defendant(s) | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | punishment and retaliation | continuing to about Nov. 4, 2020 | mounted fan aimed directly into Plaintiff's cell |
| 2 | Warden Huss | First Amendment: Retaliation | Beginning on Sept. 24, 2020 and continuing for about 35 days, or continuing to about Nov. 4, 2020 | Plaintiff placed in cell C-21. Large wall-mounted fan aimed directly into Plaintiff's cell due to Plaintiff's protected activities |
| 3 | Warden Huss | 8th Amendment: Cruel and unusual punishment | Beginning at some point in October 2020 | Allowing Plaintiff to be housed with COVID-positive prisoners |
| 4 | RN Kubont, RN Negrinelli, HUM School | 8th Amendment: Cruel and unusual punishment | Beginning on or about Oct. 22, 2020 | Identifying Plaintiff as Person Under Investigation (P.U.I.), which caused him to be housed near COVID-positive prisoners |

Hardrick seeks a declaratory judgment as well as compensatory and punitive damages.

Defendants begin by arguing that Hardrick's COVID-related Eighth Amendment claims (claims 3 and 4) must be dismissed because he lacks standing to raise them. Specifically, they assert that Hardrick never tested positive for COVID and, as a result, cannot show that he suffered any harm from the P.U.I. designation and resulting placement in C-unit at MBP. Hardrick's response only asserts that Defendants' motion to dismiss should be rejected because it is untimely. As explained below, the undersigned agrees with Defendants' standing argument and

3

recommends dismissal of Hardrick's COVID-related Eighth Amendment claims on that basis.

Defendants also argue that Hardrick's claims fail to meet the Rule 12(b)(6) standard and that they are also entitled to qualified immunity because Hardrick has failed to allege a violation of clearly established First Amendment or Eighth Amendment rights.   The undersigned agrees for several reasons.   Hardrick was labeled a P.U.I. after he refused to take COVID-19 tests.   Thus, his own actions caused prison staff to label him a P.U.I.   Thus, Defendants did not violate his Eighth Amendment rights by labeling him a P.U.I. and housing him in the COVID-positive housing unit.   The undersigned also recommends the dismissal of Hardrick's claims against Warden Huss relating to his placement in cell C-21 and the alignment of the fan to blow air into his cell.   This action does not rise to the level of a constitutional violation.   Finally, the undersigned concludes that Defendants are entitled to qualified immunity because Hardrick has failed to allege a violation of clearly established First Amendment or Eighth Amendment rights.

Accordingly, in sum, the undersigned recommends the Court grant Defendants' motion to dismiss (ECF No. 38) and enter judgment in favor of Defendants.

## II.  Factual Allegations

Hardrick says that while he was confined in Chippewa Correctional Facility, all inmates tested negative for COVID-19 in May of 2020.   (*Id.*, PageID.3.) Hardrick alleges that after he transferred to MBP on September 14, 2020, he was

4

informed that an inmate had tested COVID-19 positive at MBP.  (*Id*.)  Hardrick and all prisoners who transferred to MBP tested negative for COVID-19 on September 17, 2020.  (*Id*.)  On September 19, 2020, one transfer inmate, Prisoner Harris, complained that he felt sick.  (*Id*.)  Hardrick says that Harris was moved to Q-Unit, the designated COVID-19 unit, but only quarantined for eight days instead of the mandated 10-14 days.  (*Id*.)

Hardrick says that on September 24, 2020, he was transferred from cell C-4 to cell C-21 after he was found guilty of a misconduct ticket.  (*Id*.)  Hardrick says that C-Unit had been shut down for four years due to "black mold and other inhumane conditions" but was reopened to house the new arrivals.  (*Id*.)

Hardrick says that a wall-mounted, industrial-sized fan placed directly across from his new cell blew "dust, spittle from coughing inmates and extremely cold air directly into the Plaintiff's cell, 24/7 for the whole month of October".  (*Id*., PageID.3-4.)

Hardrick states that on September 24, 2020, all C-Unit inmates tested negative for COVID-19.  (*Id*., PageID.4.)  Hardrick says that inmate Harris later returned to C-Unit and was still complaining about feeling sick.  (*Id*.)

Hardrick alleges that he complained to Warden Huss on September 30, 2020, that the fan was exposing him to cold air, causing goose bumps, and making him cough blood due to the dust and spittle, and that his food trays were getting cold in less than one minute after they were served.  (*Id*.)  Warden Huss allegedly told Hardrick that the fan should never have been pointed into his cell.  (*Id*.)

On October 1, 2020, Warden Huss informed the prisoner population that a mass COVID-19 test would be administered by the National Guard and demanded that all prisoners submit to the test. (*Id.*) Hardrick says that he along with most of the inmates refused to take the test. (*Id.*) Hardrick says that when Deputy Warden Tasson came by his cell, Hardrick informed him about the issue with the fan and the failure to separate him from COVID-19 positive prisoners. (*Id.*) Deputy Warden Tasson allegedly told Hardrick that the fan had to remain and that there was nothing he could do. (*Id.*, PageID.5.)

On October 2, 2020, staff tried to get prisoners to take a COVID-19 test. (*Id.*) Hardrick refused the test, believing that his refusal would require staff to move him away from C-unit prisoners who had tested positive. (*Id.*) On October 4, 2020, inmate Harrison was hospitalized for COVID-19, after he was found unresponsive in his prison cell. (*Id.*) Other inmates in C-Unit tested positive for COVID-19 but were not moved out of the unit away from COVID-19 negative prisoners. (*Id.*, PageID.6.)

On or about October 22, 2020, a P.U.I. sign was placed on Hardrick's cell door, which Hardrick states assumes that he was positive for COVID-19, despite never testing positive. (*Id.*) Defendant Kubont told Hardrick that he was designated P.U.I. because he refused to take a COVID-19 test. (*Id.*, PageID.7.) Defendant Kubont explained that it was safer to assume that Hardrick was positive before housing him with COVID-19 negative prisoners until after he had completed quarantine. (*Id.*) Hardrick protested that he had already been in C-Unit for over

6

3 weeks and had been isolated for 10-14 days.   (*Id.*, PageID.8.)   Defendant Kubont allegedly told Hardrick that he would stay in C-Unit until he tested negative for COVID-19.   (*Id.*)   Later that day, Hardrick refused to take a COVID-19 test.   (*Id.*)

Hardrick says he submitted at least four kites (written requests) to Defendant School notifying him of the false P.U.I. label.   (*Id.*, PageID.9.)   Defendant School responded by stating:   "You are a P.U.I. and can be housed in C-Unit."   (*Id.*) Hardrick says that staff treated him as a COVID-19 positive prisoner, and he was not separated from COVID-19 positive prisoners during showers.   (*Id.*)   When he confronted Warden Huss, she simply shouted out:   "There's no sense in moving or transferring the negative COVID cases cause all prisoners will test positive for COVID by next week anyway."   (*Id.*, PageID.10.)   Hardrick asserts that this comment violated COVID protocol.   (*Id.*)   Hardrick says that Warden Huss stated: "The MDOC protocol is no longer in effect and does not matter here."   (*Id.*)

Hardrick says that he continued to complain that he was being housed with COVID-19 prisoners and that the fan was blowing cold air and dust into his cell, but nothing was done.   (*Id.*)   Hardrick says that Warden Huss responded that she would not help him because he refused COVID-19 tests and files grievances.   (*Id*, PageID.11.)   Hardrick says that he was finally moved after 35 days and placed into another COVID-19 infected Unit.   (*Id.*)

On October 29, 2000, Hardrick says that Defendant RN Negrinelli told him he would not be removed from the P.U.I. designation while he continued to refuse COVID-19 tests.   (*Id.*)

7

Hardrick alleges that Warden Huss violated his Eighth Amendment rights due to the placement of the industrial size fan outside his prison cell for 35 days and for housing him in the same unit as COVID-19 positive prisoners (claims 1 and 3).   (*Id.*, PageID.13-14.)   Hardrick alleges that Warden Huss retaliated against him in violation of his First Amendment rights when she refused to remove the fan because he filed grievances (claim 2).   (*Id.*, PageID.13.)   Hardrick alleges that Defendants Kubont, Negrinelli, and School violated his Eighth Amendment rights by designating him as a P.U.I. because he refused to take a COVID-19 test (claim 4).   (*Id.*, PageID.14.)

### III.   Plaintiff's Standing to Allege 8th Amendment Violations Relating to COVID-19 (Claims 3 and 4)

Defendants argue that Hardrick lacks standing to assert his claims that he was housed with COVID-19 positive prisoners and that he was labeled a P.U.I. because he suffered no injury that could be redressed by an award of damages. Hardrick is not alleging that he contracted COVID-19 while he was confined at MBP.

Article III, § 2 of the United States Constitution provides that the "judicial Power" of the United States extends only to "Cases" and "Controversies."   One element of the case or controversy requirement is that plaintiffs must establish that they have standing to pursue a particular claim.   *Raines v. Byrd*, 521 U.S. 811, 818 (1997).   For a plaintiff to invoke federal jurisdiction to bring suit in the federal courts, he must demonstrate standing.   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992); *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004).   Standing is central to the "case-or-controversy" requirement associated with Article III of the

Constitution.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Plaintiff has the burden of demonstrating that he (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable decision.  *Id.*  To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S., at 560, (internal quotation marks omitted).

Hardrick has not met this burden because he has not alleged that he suffered any injury in fact.   This Court has previously ruled that an inmate's allegation that he was exposed to COVID-19 positive prisoners is not enough to invoke standing:

> Simply put, Plaintiff's fear that he was exposed to COVID-19 or might have contracted COVID-19 is not a concrete injury which can be redressed by an award of damages. *See, e.g.*, *Balas v. Stanish*, 2021 WL 5500512 at *4 (M.D. Pa., Nov. 23, 2021) (inmate's fears of contracting COVID-19 from other inmates insufficient to confer standing); *Sledge v. Erie County Prison*, 2021 WL 5041141 at *4-5 (W.D. Pa., Oct. 29, 2021) (same). Accordingly, Plaintiff's claims must be dismissed for lack of standing.

*Gaffney v. Artis*, 1:22-cv-275, 2023 WL 2753168, at *2 (W.D. Mich. Apr. 3, 2023).

Similarly, in *Merriweather v. Artis*, 1:22-cv-305, 2023 WL 6144485 (W.D Mich. Sept. 20, 2023), the Court dismissed an inmate's claim that he feared for his safety after being exposed to COVID-19 positive prisoners due to lack of standing – despite never contracting the virus – because "fear of exposure to the virus is not a concrete injury that can be redressed by an award of damages."   *Id.* at *1.

It is recommended that the Court dismiss Hardrick's Eighth Amendment claims against Warden Huss (claim 3 in the table above) and RN Kubont, RN

Negrinelli and HUM School (claim 4) for allegedly keeping him in the same unit as COVID-19 positive prisoners and for labeling him a P.U.I. after he refused to take a COVID-19 test.   Hardrick lacks standing to bring these Eighth Amendment claims because he failed to assert an injury in fact that can be redressed by monetary damages.[2]

### IV.   Motion to Dismiss Plaintiff's Retaliation and Cruel & Unusual Punishment Claims Pursuant to Rule 12(b)(6) (claims 1 & 2)

Defendants assert that Hardrick's complaint failed to state a claim upon which relief may be granted under both the First and Eighth Amendments.

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).   Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[2]      Finally, even if Hardrick has standing to assert the claim that he feared being exposed to other prisoners who may have tested positive for COVID-19, such a claim is not actionable.   Hardrick cannot bring a claim based solely on emotional damages. Absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury."   *Id.*   Plaintiff alleges no physical injury.   Consequently, his claim for emotional damages is barred.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

Plaintiff is proceeding *pro se*. As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

Again, as noted above, Hardrick's only response is that the Court should deny the motion because a 12(b)(6) motion must be filed within 21 days from the receipt of the summons and complaint. Fed. R. Civ. P. 12(a). In general, a responsive pleading must be filed within 21 days from the service of the summons and complaint. Fed. R. Civ. P. 12(a)(1). The Prison Litigation Reform Act, however, provides an

exception.   A defendant "may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under 1983 or any other Federal law." 42 U.S.C. § 1997e(g)(1).   Defendants' motion is not untimely.

## A.   Eighth Amendment Cruel & Unusual Punishment (claim 1)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.   Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."   *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).   The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."   *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).   The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."   *Rhodes*, 452 U.S. at 348 (citation omitted).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey*, 832 F.2d at 954.

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."   *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825,

834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).    The deliberate-indifference standard includes both objective and subjective components.    *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.    To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.    Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."    *Id.* at 837.    "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."    *Id.* at 844.

Hardrick asserts that Warden Huss failed to remove a fan that blew cold air, dust, and spittle into his prison cell.    First, Hardrick has failed to satisfy the objective prong by setting forth sufficient factual allegations in his complaint that the fan allegedly blowing air into his cell posed a substantial risk of serious harm.    At best, Hardrick says that he experienced discomfort due to the fan blowing air into his cell.    The act of turning a fan on in the hall outside Plaintiff's cell cannot be considered adverse conduct for purposes of retaliatory conduct. *Johnson v. Pancheri*, No. 2:13-cv-334, 2015 WL 1022186, at *2 (W.D. Mich. Mar. 9, 2015).    Nor can a prisoner state a claim under the Eighth Amendment by asserting a fan blew cold air into a prison unit.    *Robinson v. McBurney*, 2:07-cv-85, 2009 WL 440634, *2 (W.D. Mich., Feb. 23, 2009).    Hardrick has not alleged that the fan blew dangerously cold

air or that he was unable to wear warmer clothing while in his cell.   An inmate who alleges that he was subjected to cold temperatures without alleging resulting harm – other than having to wear a coat – fails to state an Eighth Amendment violation. *Powell v. Woodard*, 2017 WL 4171988 (W.D. Tenn., Sept. 20, 2017); *Watson v. Curley*, 2:12-cv-259, 2012 WL 6019498 (W.D. Mich. Dec. 3, 2012).

Similarly, Hardrick speculates that the fan was blowing the COVID-19 virus into his cell, but he fails to assert that he tested positive for COVID-19 virus.   In the opinion of the undersigned, Hardrick has not asserted facts sufficient to establish the objective prong of his Eighth Amendment claim.

In the opinion of the undersigned, Hardrick has failed to state an Eighth Amendment claim against Warden Huss related to the use of the fan outside his cell. Accordingly, the undersigned recommends dismissal of claim 1.

### B.   First Amendment Retaliation (claim 2)

Hardrick alleges that Warden Huss refused to move the fan outside his cell because he had filed grievances against her and other prison staff.   Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id*.

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).   "If the grievances are frivolous, however, this right is not protected."  *Id.*   Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith v. Campbell*, 250 F.3d 1032, 1037.   "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal."  *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

First, Hardrick alleges that he did not file a grievance until *after* the fan was turned on, but before he allegedly spoke with Warden Huss.   Hardrick alleges that when he arrived in his new cell on September 24, 2020, a fan outside the cell was readjusted to blow directly into his cell (ECF No. 1, PageID.3-4), and on October 3, 2020, he filed his grievance regarding the fan (ECF No. 1-1, PageID.20).   In his

grievance, which was rejected at each step of the grievance process, he stated that when he first spoke with Warden Huss, she responded that she did not know why the fan was directed into his cell.  (*Id.*)  After Hardrick filed this grievance, he again spoke with Warden Huss about the fan on October 25, 2020.  At this point, the fan had allegedly been blowing into Hardrick's cell for several weeks.  Hardrick says that Warden Huss responded by stating: "Why would I help a guy that files grievances against me . . . . I'll cut the fan off when you take the test; other than that, make the best of your refrigerated cell."  (*Id.*, PageID.11.)  Although Hardrick does not state the exact date that he was moved out of the cell, he concedes that he moved out of his cell soon after this conversation.  (*Id.*, paragraph 69.)

Engaging in protected conduct after the alleged retaliatory act, is not evidence of protected conduct for an alleged prior retaliatory act.  *King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir., Oct. 7, 2005).   Additionally, the Sixth Circuit has held that an "informal conversation with the prison official was not protected conduct."  *Clark v. Johnson*, No. 13-3581, 2014 WL 11070973 (6th Cir., June 16, 2014).

Furthermore, it is the opinion of the undersigned that Hardrick did not engage in protected conduct by filing his October 3, 2020, grievance.  First, the grievance was rejected because it was not an issue that could be properly grieved in the grievance process.  (ECF No, 33, PageID.199-204 (Report and Recommendation discussing this grievance).)  Second, the October 3, 2020, grievance did not allege that Warden Huss took any wrongful action.  More importantly, by the time Hardrick spoke with Warden Huss on October 25, 2020, the fan had allegedly already

been blowing into his cell for many days.   As stated above, Warden Huss did not point the fan into Hardrick's cell.[3]   By October 25, 2020, the act of pointing the fan into Hardrick's cell had already occurred and he admits that soon after this conversation he was moved to a new cell.[4]

### 2.   Adverse Action

Even if the grievance is considered protected conduct, Hardrick has failed to allege sufficient facts to show that an adverse action was taken.   To establish the second element of a retaliation claim, a prisoner must show an adverse action by a prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights.   *Thaddeus-X*, 175 F.3d at 396.   The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.   The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence.   *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

In the opinion of the undersigned, a minor inconvenience such as a fan blowing air outside a prison cell cannot constitute adverse conduct that would deter an ordinary prisoner from engaging in protected conduct.   As this Court has previously

---

[3]      Warden Huss cannot be liable under a respondent superior theory for the acts of her subordinates simply because she is the Warden.   *Brown v. Smith*, No. 1:17-cv-282, 2017 WL 2457199, *15 (W.D. Mich. June 7, 2017) (Supervisors failure to ensure subordinates did not leave fans running 24 hours per day from June through November was not an unconstitutional act.)

[4]      Hardrick alleged that he was placed in cell C-21 on September 24, 2020. (ECF No. 1, PageID.3)   He alleges that he was transferred to a different unit 35 days later. (*Id.*, PageID.11.)

explained "the act of turning a fan on in a hall outside Plaintiff's cell cannot be considered adverse conduct or retaliatory conduct. . . ." *Johnson v. Pancheri*, No. 2:13-cv-334, 2015 WL 1022186, *2 (W.D. Mich. Mar. 9, 2015).

Accordingly, the undersigned recommends dismissal of claim 2 – Hardrick's retaliation claim against Warden Huss based on the placement of the fan – because Hardrick has failed to state a claim on which relief may be granted.

## V.  Qualified Immunity

Alternatively, Defendants move for qualified immunity because Hardrick cannot show a violation of clearly established law.   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The analysis entails a two-step inquiry.   *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).   First, the court must "determine if the facts alleged make out a violation of a constitutional right."   *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).   Second, the court asks if the

right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct.  305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

19

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034.

*D.C. v. Wesby*, 538 U.S. 48, 63-64 (2018).

Hardrick has failed to cite any authority to support his claim that being labeled as a P.U.I. after his refusal to take a COVID-19 test and being housed in the same prison unit as prisoners who tested positive for COVID-19 violated clearly established law. Claims like Hardrick's, allegedly asserting that the MDOC failed to protect prisoners from the spread of COVID-19, fail to state a claim upon which relief may be granted. *See, e.g.*, *Watson v. Washington*, 2021 WL 4480279 (E.D. Mich. Sept. 30, 2021); *Good v. Washington*, No. 2:21-cv-18, 2022 WL 831491 (W.D. Mich. Mar. 21, 2022); *Williams v. Brown*, No. 2:21-cv-251 (W.D. Mich. Mar. 29, 2002); *Pharr v. Brown*, 2:21-cv-156, 2022 WL 601095 (W.D. Mich. Mar. 1, 2022).

In this case, Hardrick's refusal to test for COVID-19 caused Defendants to label him as a P.U.I. Hardrick suffered no harm. Despite his claims that he was unnecessarily exposed to positive COVID-19 prisoners, he does not claim that he

contracted the virus.[5]   In the opinion of the undersigned, Hardrick has failed to cite clearly established law that could show that Defendants violated his Eighth Amendment rights.

Similarly, Hardrick has failed to cite any clearly established law showing that a fan blowing into a prison cell violates a prisoner's Eighth Amendment rights.   *See*, *Sutherland v. Abdellatiff*, No. 2:13-cv-68, 2015 WL 520206. *16 (W.D. Mich. Feb. 9, 2015) (rejecting claim that Defendants acted with deliberate indifference to inmate's numerous serious medical issues by requiring inmate to live in an area where a large fan blew cold air on him which caused him pain).   In the opinion of the undersigned, Defendants are entitled to qualified immunity on Hardrick's Eighth Amendment claims.

Finally, for the reasons discussed above, Warden Huss is entitled to qualified immunity on Hardrick's First Amendment retaliation claim involving the failure to remove the fan.   In the opinion of the undersigned, Hardrick has failed to set forth facts that could establish a violation of clearly established First Amendment law.

## VI.   Recommendation

It is respectfully recommended that the Court grant Defendants' motion to dismiss and dismiss this case with prejudice.

---

[5]   Hardrick has not cited any cases in which a Court determined that labeling an inmate as a P.U.I. violated a prisoner's Eighth Amendment rights.   Contrary to Hardrick's allegations, the fact that Defendants labeled him as a P.U.I. after he refused to test for COVID-19, shows that Defendants took the virus seriously.

It is further recommended that the Court deny the remaining motions: Plaintiff's motion for a show cause order and Defendants' motion to strike Plaintiff's reply brief as moot.[6]

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:     April 5, 2024                              /s/ *Maarten Vermaat*
                                                      MAARTEN VERMAAT
                                                      U.S. MAGISTRATE JUDGE

---

[6]     Hardrick filed a motion to show cause why non-party MDOC employees Sergeant Borgen and Inspector Miller should not be held in civil or criminal contempt for refusing to deliver to Hardrick the R&R on Defendants' prior motion for summary judgment.   (ECF No. 47)   The Court can find an individual in contempt for violating a Court order.   *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998).   There has been no violation of a Court order.
        In addition, Defendants move to strike Hardrick's unauthorized reply brief. (ECF No. 52.)   Hardrick was required to first seek leave of the Court to file a reply brief to a response to a non-dispositive motion.   W.D. Mich. LCivR 7.3(c).   Hardrick did not seek leave to file a reply brief and no reply brief is necessary for the Court rule on this issue.