UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK #606507,

Plaintiff,

v.

ERICA HUSS, et al.,

Defendants.
_______________________________/

Case No. 2:21-cv-00229

Hon. Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R. & R.) addresses Defendant's motion for summary judgment – ECF No. 95 – and Defendant's motion to compel Plaintiff's deposition appearance and for costs and fees – ECF No. 91.

State Prisoner Bernard Hardrick filed a verified complaint under 42 U.S.C. § 1983 alleging that Defendant Warden Huss failed to take action to prevent a fan from blowing cold air into his cell during the COVID-19 pandemic. The remaining claim is for retaliation against Defendant Warden Huss. The Sixth Circuit summarized the facts:

> *Industrial-Sized Fan.* While incarcerated at MBP, prison officials placed Hardrick in a cell located across the hallway from an industrial-sized fan. The fan was "mounted on the wall and adjusted to aim directly into [his] cell." Compl., R. 1, PageID 3. The air from the fan was "excessively cold" and blew in dust and "spittle" from other coughing inmates. *Id.* at PageID 4, 10. These conditions caused Hardrick to "cough up blood" and to suffer other less severe discomforts. *Id.* Hardrick first complained about the fan to Warden Huss, she agreed that it should not have been angled towards Hardrick's cell. Although he told her that he was coughing up blood, Warden Huss did not indicate that she would address the problem.
>
> Shortly thereafter, Hardrick filed two grievances about his living conditions through the prison's internal system for lodging complaints. The first grievance was about the fan. Hardrick stated that he was "suffering every day" from the effects of the cold air and dust blowing into his cell. Ex. A, R.1-1, PageID 20. In the second grievance, Hardrick raised concerns about being housed in a unit with prisoners who had tested positive for COVID-19. Prison officials rejected both grievances, saying they were improper because they were "not specific" to Hardrick and pertained to "the prison population as a whole." Ex. A, R. 1-1, PageID 21; Ex. B, R. 2-1, PageID 25. Hardrick's internal appeals of those rejections failed.
>
> In addition to these formal grievances, Hardrick complained verbally about the fan to prison leadership. The deputy warden told Hardrick that "there was nothing he could do" about the fan, and that Hardrick "would have to take it up with the warden [(i.e., Huss)]." Compl., R. 1, PageID 5. So Hardrick complained to Warden Huss again, repeating that the fan was causing him to inhale dust and spittle and cough up blood. Warden Huss responded: "Why would I help a guy that files grievances against me. Besides that, you're the same guy who gives my staff a hard time whenever they come around with [COVID-19] tests and you refuse it. I tell you what, I'll cut the fan off when you take the test; other than that, make the best of your refrigerated cell." *Id.* at PageID 11. Hardrick did not get relief from the "physical maladies" caused by the fan until prison officials transferred him to a different MBP unit ten days later. *Id.* at PageID 11, 13.

ECF No. 71, PageID.501-502.

This Court previously dismissed Plaintiff's retaliation claim after Defendant filed a motion to dismiss. In reversing this Court's dismissal of the retaliation claim, the Sixth Circuit concluded that Plaintiff satisfied the protected conduct element of his retaliation claim by filing a non-frivolous grievance regarding the fan, and a

grievance regarding his COVID-19 exposure. *Id.*, PageID.506. The Sixth Circuit determined that the fact a grievance failed to allege that Defendant Warden Huss took any wrongful action was irrelevant to Plaintiff's retaliation claim. The Sixth Circuit framed the issue as "Warden Huss refused to take corrective action—such as changing the fan's angle, moving him to another cell, or turning the fan off—because he had filed grievances." *Id.*, PageID.507.

Next, the Sixth Circuit found that Plaintiff sufficiently alleged adverse action, which is in "most cases . . . a question of fact . . . not amenable to a resolution as a matter of law." *Id.*, PageID.507. To reach a jury, a plaintiff "need only establish that 'the retaliatory acts amounted to more than a de minimis injury.'" *Id.*, PageID.508. The Sixth Circuit found that Hardrick satisfied this standard because Huss refused to prevent the fan from blowing dust and cold air into his excessively cold cell, which caused him to cough-up blood. *Id.*

Finally, the Sixth Circuit found that Hardrick adequately alleged causation by asserting that Huss said: "Why would I help a guy that files grievances against me" and that she refused to address the fan for another ten days. *Id.*

Additionally, the Sixth Circuit determined that Warden Huss was not entitled to the defense of qualified immunity because she "violated clearly established law when she refused to resolve the harms caused by the industrial-sized fan." *Id.*, PageID.509. In other words, the Sixth Circuit found that a reasonable officer cannot harass an inmate with a cold fan because he had filed grievances. *Id.* The Sixth Circuit cautioned that "we have repeatedly emphasized that retaliation claims should

go to a jury unless they suffer a clear legal defect such as a lack of causation, or the adverse action alleged is 'truly inconsequential.'" *Id.*. PageID.509-510.

## III. Summary Judgment Standard

Now, Defendant Huss moves for summary judgment. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Analysis

### 1. Motion for Summary Judgment

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in protected conduct; (2) an adverse action was

taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

An adverse action is an action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. Furthermore, "the threat of adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lapin*, 630 F.3d 468, 472 (6th Cir. 2010).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

Warden Huss argues that Hardrick did not engage in protected conduct at the time his claim arose. She asserts that she was not aware of his grievance until she received his Step II grievance on October 28, 2026. ECF No. 24-3, PageID.155. However, the Sixth Circuit has already pointed out the problem with this argument. Hardrick asserts that Huss stated: "Why would I help a guy that files grievances against me" and that she refused to address the fan for another ten days. ECF No. 71, PageID.508. The Sixth Circuit further stated that Hardrick alleges "that Warden Huss refused to take corrective action—such as changing the fan's angle, moving him to another cell, or turning the fan off—because he had filed grievances." *Id.*, PageID.507. Therefore, a question of fact exists regarding whether Huss was aware that Hardrick had filed grievances before he requested that Huss take corrective action regarding the fan.

Huss argues that Hardrick did not suffer from adverse action because of the air blowing from the fan. Huss argues that the Sixth Circuit's decision in *Thaddeus-X*, finding that the threat of cold food cannot possibly deter an average convicted criminal from filing a lawsuit, supports her motion and is dispositive on the outcome of this case. 175 F.3d. at 404. Further, Huss argues that the concerns previously expressed in the Sixth Circuit's decision – finding that Hardrick satisfied the adverse action element by raising more than a de minimis injury because he alleges that he was coughing blood from his exposure to the blowing dust and cold air – were determined to be false claims during the discovery stage of this litigation. Huss argues that Hardrick was regularly seen by medical care staff and that he never made

complaints asserting that he was "coughing" or had "goosebumps." ECF No. 96, PageID.631; ECF No. 96-2, PageID.643-701 (Hardrick's deposition); *Id.*, PageID.702-720 (medical records denying COVID symptoms or chills/shaking). Hardrick has asserted more than that he was forced to eat cold food or that he had COVID-19 or feverish symptoms. Hardrick maintains that he was coughing up blood and subjected to cold blowing air due to the fan blowing air into his cell. ECF No. 99-100. In the opinion of the undersigned, a question of fact remains on the adverse action element of his retaliation claim.

Huss argues that Hardrick cannot support the causation element because "[t]here was no retaliatory motive in the fan being on" and "the MDOC instructed that the fans be on as COVID-19 precaution and because prisoners complained about the fans no matter how they were angled." ECF No. 96, PageID.632-633. Again, the Sixth Circuit has already held in this case that Huss's statement to Hardrick: "Why would I help a guy that files grievances against me" stated a claim for relief on causation. ECF No. 71, PageID.508. The alleged statement is enough to create an issue of material fact on the causation element of Plaintiff's retaliation claim.

For these reasons, Huss's argument that she is entitled to qualified immunity because the facts establish that she did not violate clearly established law necessarily fails. The Sixth Circuit already framed the clearly established law that was allegedly violated:

> We conclude that Warden Huss violated clearly established law when she refused to resolve the harms caused by the industrial-sized fan. We ask whether a reasonable officer at the time would have known that they cannot refuse to help an inmate who is coughing up blood because he filed grievances against her. The answer is yes. Prison officials have long known that they cannot "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). And our caselaw specifically prohibits officials from doing so in retaliation for the inmate having filed grievances. *See Thaddeus-X*, 175 F.3d at 384, 398. Indeed, this proposition is so firmly established that we have routinely held that officers violate the First Amendment when they delay or deny an inmate medical treatment in retaliation for filing grievances. *See, e.g.*, *Bell*, 308 F.3d at 605; *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (order); *Wash v. Gilless*, No. 99–5036, 2000 WL 659225, at *4 (6th Cir. May 11, 2000) (order). Warden Huss would therefore have had "fair and clear warning" that her actions were unlawful. *Heeter v. Bowers*, 99 F.4th 900, 915 (6th Cir. 2024) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam)).

ECF No. 71, PageID.509. Here, there exists a question of fact regarding whether Huss took retaliatory action in response to Hardrick's grievances. In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

Finally, to the extinct that Hardrick's request for declaratory judgment remains in this case, it is recommended that the Court dismiss that request. Hardrick is no longer incarcerated at the Marquette Branch Prison and Huss has retired and is no longer the warden at the prison. Moreover, if Hardrick succeeds in this case, a monetary damage award is enough of an effective deterrent in this matter. *See Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)

(In determining whether a declaratory judgment is appropriate, a court considers whether there is an alternative remedy which is better or more effective).

**2. Motion to Compel Deposition and for Costs and Fees**

On March 27, 2026, Hardrick refused to participate in a properly noticed deposition. ECF No. 92-2. Defendant has now taken Hardrick's deposition, so the request to compel his deposition is now moot. However, Defendant incurred $180.82 in fees for the cost of the deposition that Hardrick refused to participate in. ECF No. 92-3. As noted by Defendant, Fed. R. Civ. P. 37(d)(1)(A)(i) specifically provides that when a party fails to attend his own deposition after being properly notified he or she may be sanctioned by the court. Hardrick was not justified in refusing to participate in his deposition on March 27, 2026. Accordingly, it is recommended that the Court require Hardrick to pay Defendant the costs incurred in the amount of $180.82.

**V. Recommendation**

It is respectfully recommended that the Court deny in part and grant in part Defendants' motion for summary judgment. It is recommended that the Court grant the motion in part by dismissing Plaintiff's request for declaratory judgment and deny as to Plaintiff First Amendment retaliation claim against Warden Huss relating to the placement of the fan.

It is further recommended that the Court deny in part and grant in part Defendant's motion to compel Plaintiff's deposition and for costs. Because Defendant has now taken Plaintiff's deposition, it is recommended that the Court

deny that request, but because Plaintiff's failure to participate in his first deposition was unjustified, it is recommended that the Court require Plaintiff to reimburse Defendant for the $180.82 in fees incurred.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 7, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE